**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 12-30031

MARK CHRISTOPH SIMERLEIN
ANNE JEANNINE SIMERLEIN

        Debtors


FIRST NATIONAL BANK,
a National Banking Association

        Plaintiff

        v.

Adv. Proc. No. 12-3031

MARK CHRISTOPH SIMERLEIN
and ANNE JEANNINE SIMERLEIN

        Defendants


AUTO OWNERS INSURANCE
COMPANY

        Plaintiff

        v.

Adv. Proc. No. 12-3037

MARK C. SIMERLEIN

        Defendant


**M E M O R A N D U M**

**APPEARANCES**:   STANLEY F. RODEN, ESQ.
           10269 Kingston Pike
           Knoxville, Tennessee  37922
           Attorney for Plaintiff First National Bank

HODGES, DOUGHTY & CARSON, PLLC
  Oliver D. Adams, Esq.
  Post Office Box 869
  Knoxville, Tennessee  37901-0869
  Attorneys for Plaintiff Auto Owners Insurance Company


 LAW OFFICES OF MAYER & NEWTON
  John P. Newton, Jr., Esq.
  1111 Northshore Drive
  Suite S-570
  Knoxville, Tennessee  37919
  Attorneys for Defendants/Debtors

**RICHARD STAIR, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

These adversary proceedings are before the court upon (1) the Complaint for Exception to Discharge of Certain Debts filed by the Plaintiff First National Bank on April 5, 2012, asking the court for a judgment against the Defendants Mark Simerlein and Anne Simerlein in the amount of $23,303.62, inclusive of attorneys' fees and costs, and for a determination under 11 U.S.C. § 523(a)(2) and/or (4) (2006) that the judgment is nondischargeable (First National Adversary Proceeding); and (2) the Complaint by Auto Owners Insurance Company to Determine Dischargeability filed on April 9, 2012, by Auto Owners Insurance Company asking the court for a judgment against the Defendant Mark Simerlein in the amount of $86,653.14 together with interest and for a determination under 11 U.S.C. § 523(a)(2), (4), and/or (6) (2006) that the judgment is nondischargeable (Auto Owners Adversary Proceeding). Upon motion of the parties, these adversary proceedings were consolidated for trial pursuant to the Order entered on October 12, 2012, in the First National Adversary Proceeding and the Pre-Trial Order entered in the Auto Owners Adversary Proceeding on October 16, 2012.

The consolidated trial of the First National Adversary Proceeding and the Auto Owners Adversary Proceeding was held on August 2, 2013. At the conclusion of the trial, the court noted that no evidence had been produced by First National Bank relating to the Defendant Anne Jeannine Simerlein and that the Complaint would be dismissed as to this defendant.[1] The record before the court consists of nineteen exhibits introduced into evidence and the testimony of four witnesses, Todd Bolinger, Matthew Simmons, Dee Wiseman Sharp, and the Defendant.

---

[1] Because Anne Jeannine Simerlein will be dismissed as a party defendant, all references to "the Defendant" shall be to Mark Simerlein. Additionally, the court will refer to each Plaintiff individually by name or will collectively refer to them as "Plaintiffs."

3

This is a core proceeding.  28 U.S.C. § 157(b)(2)(I) (2006).

## I

On October 30, 2007, PowerTenn Properties, LLC, a Tennessee limited liability company owned wholly by Mark and Anne Simerlein, executed a Note in favor of First National Bank in the principal amount of $99,900.00, which it renewed on January 15, 2009 (collectively, the Note). TRIAL EX. 2.  Under the terms of the Note, the Defendant was required to provide annual financial statements and tax returns to First National Bank, and the failure to maintain insurance on the collateral constituted an event of default.  TRIAL EX. 2.  It is undisputed that the Defendant guaranteed any and all debts owed to First National Bank by PowerTenn Properties, LLC.[2]  Also on October 30, 2007, PowerTenn Properties, LLC executed a Deed of Trust pledging as security for the Note real property located at 4909 Skyview Drive, Knoxville, Tennessee (Skyview Drive Property). TRIAL EX. 3.  Under the terms of the Deed of Trust, PowerTenn Properties, LLC was required to maintain insurance on the Skyview Drive Property with First National Bank named as loss payee, and First National Bank was to be notified immediately of any loss or insurance proceeds payout. TRIAL EX. 3.  Specifically, the Deed of Trust provides, in material part:

> Party of the First Part shall keep the improvements now existing or hereafter erected on the premises insured against loss by fire, . . . with some insurance company or companies approved by Secured Party, in an amount of not less than the amount of this Deed of Trust, and shall pay promptly when due all premiums on such insurance and assigns to Secured Party all interest in such policy or policies of insurance and the proceeds thereof.  Secured Party shall be named as a loss payee on all such

---

[2] A Guaranty executed by the Defendant dated August 2, 2004, was attached as Exhibit D to the Complaint. Notwithstanding that this document was not included within the trial exhibits and was not made a part of the record at trial, the court takes judicial notice of the Guaranty pursuant to Rule 201 of the Federal Rules of Evidence because the Defendant admitted its execution in his Answer.  See COMPL. at ¶ 7; ANS. at ¶ 7.

policies of insurance.  In the event of loss, Party of the First Part shall give immediate
notice by mail to Secured Party, which may make proof of loss if not made promptly
by Party of the First Part, and each insurance company concerned is hereby
authorized and directed to make payment for any loss directly to Secured Party,
instead of Secured Party and Party of the First Part jointly, and the insurance
proceeds, or any part thereof, may be applied by Secured Party, at its option, either
to the reduction of the Indebtedness hereby secured or to the restoration or repair of
the property damaged.  A violation of this covenant gives the Secured Party, its
successors and assigns, the right to foreclose this Deed of Trust.

TRIAL EX. 3.

As required by the Deed of Trust, insurance was procured for the Skyview Drive Property

with Auto Owners Insurance Company.  First National Bank was listed as loss payee and its lien was

noted in the original insurance policy obtained by PowerTenn Properties, LLC; however, although

noted within Auto Owners Insurance Company's computer system and listed in the records for

William Knight Insurance Agency, due to an underwriting error by Auto Owners Insurance

Company, First National Bank's lien was not noted and it was not listed as loss payee in the renewal

policy issued on April 25, 2009, with a policy term effective through April 25, 2010.  COLL. TRIAL

EX. 1 at 10.[3]

On January 4, 2010, a fire destroyed the house located on the Skyview Drive Property,

resulting in a total loss.  On the day of the fire, the Defendant had conversations with his insurance

agent, Dee Wiseman Sharp, who is employed with William Knight Insurance Agency, but did not

notify First National Bank of the fire.  On January 4, 2010, Ms. Sharp prepared and sent a Property

Loss Notice to Auto Owners Insurance Company identifying the property, stating that it had been

---

[3] The renewal policy reflects that the "Limit of Insurance" for the building erected on the Skyview Drive
Property was $83,000.00 subject to an "Inflation Guard Factor" of 1.063.  COLL. TRIAL EX. 1 at 10.

subject to a fire, and noting First National Bank as "Mortgagee." TRIAL EX. 19. On January 6, 2010,

after receiving notice of the fire from William Knight Insurance Agency, Auto Owners Insurance

Company sent what claims adjuster Matthew Simmons referred to as a "fair trade letter" to

PowerTenn Properties, LLC, in care of the Defendant, outlining its rights under the insurance policy

and the insured's obligations with respect to its claim. COLL. TRIAL EX. 22. Also included with the

fair trade letter was a Proof of Loss form to be completed by the insured as well as a checklist

entitled "What to do in Case of Loss" which directs that "[i]f a covered loss occurs, the **insured**

must: . . . d. send to **us**, within 60 days after the loss, a proof of loss signed and sworn to by the

**insured**, including: . . . (4) all encumbrances on the property." COLL. TRIAL EX. 22 (emphasis in

original). Thereafter, PowerTenn Properties, LLC submitted to Auto Owners Insurance Company

a Proof of Loss form dated January 14, 2010. TRIAL EX. 5; COLL TRIAL EX. 22. This form,

handwritten by the Defendant, reflects that the loss was incurred by an "accidental and/or unknown

loss due to fire - fire damage," estimates the loss at $154,144.27 less the $1,000.00 deductible, states

that the Defendant is the "owner of record in company name PowerTenn Properties," and identifies

Anne Simerlien, Secretary - PowerTenn Properties, LLC as "any other person or entity who had an

interest in the property." TRIAL EX. 5; COLL TRIAL EX. 22. It does not make any reference to First

National Bank and/or the mortgage on the Skyview Drive Property.

Subsequent to receiving the Proof of Loss from the Defendant, Auto Owners Insurance

Company issued a check to PowerTenn Properties, LLC in the amount of $86,653.14 on February 3,

2010. COLL. TRIAL EX. 20; COLL TRIAL EX. 21. This check was deposited by the Defendant without

endorsement and not paid by his bank, Branch Banking & Trust. Thereafter, Auto Owners Insurance

6

Company issued a second check to PowerTenn Properties, LLC on February 9, 2010, which was deposited into a Branch Banking & Trust account in the name of "Mark C. Simerlein dba PowerTenn Properties, LLC" (BB&T Account). COLL. TRIAL EX. 20; COLL. TRIAL EX. 21; COLL. TRIAL EX. 7. After Auto Owners Insurance Company paid the initial claim amount, Mr. Simmons prepared and forwarded to the Defendant for his signature a second Proof of Loss form revising the claim amount to $110,503.14, which consisted of the $86,653.14 payment for the building, lost income of $4,200.00, and $19,650.00 for debris removal. TRIAL EX. 4; COLL. TRIAL EX. 22. In response to the request on the Proof of Loss form to "Please indicate any other person or entity who had an interest in the property and describe that interest," the second Proof of Loss form states "None." TRIAL EX. 4; COLL. TRIAL EX. 22. In connection with the second Proof of Loss submitted by the Defendant, Auto Owners Insurance Company issued to PowerTenn Properties, LLC a check in the amount of $19,650.00 on August 23, 2010, and a check in the amount of $4,200.00 on September 15, 2010, both of which were deposited into the BB&T Account. COLL. TRIAL EX. 20; COLL. TRIAL EX. 7. None of the insurance proceeds were paid to First National Bank for repayment of the Note, nor were any of the proceeds used to rebuild the house on the Skyview Drive Property.

Under the terms of the Note and First National Bank's requirement that PowerTenn Properties, LLC submit annual tax returns and financial statements, the Defendant sent an email to Lee Fulcher with First National Bank on January 18, 2010, attaching his personal 2008 tax return, the 2008 tax return for PowerTenn Properties, LLC, and a financial statement for PowerTenn Properties, LLC prepared by the Defendant as of January 18, 2010. COLL. TRIAL EX. 6. The financial statement lists the Skyview Drive Property at a value of $78,000.00 on its October 30, 2007

7

purchase date, lists a loan balance to First National Bank of $99,000.00 with monthly payments of $700.00, a monthly rental income of $800.00, and lists the Skyview Drive Property market value "as of 1-18-2010" at $130,000.00.  COLL. TRIAL EX. 6.  Neither the financial statement nor the email to First National Bank mentioned the January 4, 2010 fire and resulting loss.

PowerTenn Properties, LLC continued making payments to First National Bank on the Note through December 2010.  After it stopped receiving payments, First National Bank set out to have the Skyview Drive Property appraised, at which time it learned of the fire and the condition of the real property.  In January or February 2011, Mr. Bolinger scheduled a meeting with the Defendant, who acknowledged that PowerTenn Properties, LLC had received the insurance proceeds from Auto Owners Insurance Company but advised First National Bank that the proceeds had been spent on expenses for other properties.  On August 29, 2011, First National Bank filed a lawsuit in the Chancery Court for Knox County styled *First National Bank v. PowerTenn Properties, LLC, Mark C. Simerlein, Anne J. Simerlein, Auto Owners Insurance Company, William Knight Insurance Agency, Inc., and Dee Wiseman Sharp*, docket no. 181168-3, seeking to recover the proceeds that the Defendant had received from Auto Owners Insurance Company, the balance of the Note, interest, attorneys' fees, and costs (Chancery Court Lawsuit).  The Chancery Court Lawsuit was subsequently settled under the terms of which Auto Owners Insurance Company paid First National Bank $86,653.14, representing the proceeds attributable to the fire loss previously paid to PowerTenn

8

Properties, LLC.  Additionally, under the settlement, First National Bank assigned its rights for recovery of the $86,653.14 to Auto Owners Insurance Company.[4]

The Defendant and Anne Simerlein filed the Voluntary Petition commencing their joint Chapter 7 bankruptcy case on January 4, 2012, and received a discharge on April 16, 2012.  First National Bank and Auto Owners Insurance Company each timely filed the Complaints initiating their adversary proceedings on April 5, 2012 and April 9, 2012, respectively.  As stated in the Pre-Trial Order entered on August 14, 2012, in the First National Adversary Proceeding, the issues before the court are (a) whether the Defendant[] obtained money by false pretenses, false representation or actual fraud as set forth in 11 U.S.C. § 523(a)(2)(A); (b) whether the Defendant[] committed fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny entitling the Plaintiff to except the debt from discharge under 11 U.S.C. § 523(a)(4); and (c) the judgment amount to which First National Bank is entitled and whether it is entitled to attorneys' fees and costs.  As set forth in the Pre-Trial Order entered in the Auto Owners Adversary Proceeding on October 16, 2012, the issues before the court are (a) whether Auto Owners Insurance Company is entitled to a judgment against the Defendant in the amount of $86,653.14 plus interest; (b) whether the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)(A); (c) whether the judgment is nondischargeable under 11 U.S.C. § 523(a)(4); and (d) whether the judgment is nondischargeable under 11 U.S.C. § 523(a)(6).

---

[4] The court takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of Collective Trial Exhibit 28, which consists of the Summons and Complaint initiating the Chancery Court Lawsuit,  and Collective Trial Exhibit 30, which includes the Settlement and Release Agreement between First National Bank, Auto Owners Insurance Company, William Knight Insurance Agency, and Dee Wiseman Sharp.  These documents were pre-marked and pre-filed but were not introduced into evidence at trial.  Additionally, the record contains testimony concerning the Chancery Court Lawsuit as well as First National Bank's settlement with Auto Owners Insurance Company.

## II

As material to these adversary proceedings, the following subsections of 11 U.S.C. § 523 are

at issue:

(a) A discharge under section 727,[5] . . . of this title does not discharge an individual
debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of
credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than
a statement respecting the debtor's or an insider's financial condition;

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity,
embezzlement, or larceny; [or]

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the
property of another entity[.]

11 U.S.C. § 523(a). The burden of proving each element necessary for a determination of

nondischargeability by a preponderance of the evidence is borne by the Plaintiffs, against whom the

court construes § 523(a) strictly, while construing it liberally in favor of the Defendant. *Grogan v.*

*Garner*, 111 S. Ct. 654, 661 (1991); *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*,

141 F.3d 277, 281 (6th Cir. 1998).

---

[5] Chapter 7 debtors receive a discharge of prepetition debts, "[e]xcept as provided in section 523 of this title[.]"
11 U.S.C. § 727(b) (2006). This accomplishes the goals of Chapter 7 to relieve "honest but unfortunate" debtors of their
debts and allow them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897,
901 (Bankr. E.D. Tenn. 2003) (citations omitted).

In order to satisfy the requirements of § 523(a)(2)(A), the Plaintiffs must prove the Defendant

obtained money, property, or services through material misrepresentations that he knew was false

or that he made with gross recklessness, that the Defendant intended to deceive the Plaintiffs, that

the Plaintiffs justifiably relied on the Defendant's false representations, and that the Plaintiffs'

reliance was the proximate cause of their loss.  *McDonald v. Morgan (In re Morgan)*, 415 B.R. 644,

649 (Bankr. E.D. Tenn. 2009).

> "[F]alse pretense" involves implied misrepresentation or conduct intended to create
> and foster a false impression, as distinguished from a "false representation" which
> is an express misrepresentation[, while a]ctual fraud "consists of any deceit, artifice,
> trick, or design involving direct and active operation of the mind, used to circumvent
> and cheat another - something said, done or omitted with the design of perpetrating
> what is known to be a cheat or deception."

*Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003) (citations

omitted).  "[F]alse representations and pretenses encompass statements that falsely purport to depict

current or past facts," *Peoples Sec. Fin. Co., Inc. v. Todd (In re Todd)*, 34 B.R. 633, 635 (Bankr.

W.D. Ky. 1983), and fraudulent intent may be "inferred as a matter of fact" based on the totality of

the circumstances when the Defendant has engaged in conduct that was "somewhat blameworthy."

*Copeland*, 291 B.R. at 759.  Nevertheless, mere negligence or evidence of "[a] 'dumb but honest'

[debtor] does not satisfy the test." *Copeland*, 291 B.R. at 765-66 (quoting *Palmacci v. Umpierrez*,

121 F.3d 781, 788 (1st Cir. 1997)).  In the Sixth Circuit, courts are to employ a subjective standard

to determine intent.  *Rembert*, 141 F.3d at 281.

> A subjective approach, of course, requires that the trier-of-fact focus solely on the
> individual characteristics of the debtor.  Yet, like an objective approach, a subjective
> approach still entails the utilization of circumstantial evidence given that a debtor
> will rarely, if ever, admit to acting in a fraudulent manner; helpful in this regard are
> many of the traditional indicia of fraud – e.g., a suspicious timing of events,
> insolvency, transfers to family members or other insiders.  In utilizing such indicia,
> however, the Sixth Circuit cautioned against "factor-counting," instead holding,

11

"[w]hat courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent."

*EDM Mach. Sales, Inc. v. Harrison (In re Harrison)*, 301 B.R. 849, 854 (Bankr. N.D. Ohio 2003)

(quoting *Rembert*, 141 F.3d at 282; other citations omitted).

The court must also find justifiable reliance; i.e., the party seeking a determination of nondischargeability actually relied on the representations and, based upon the facts and circumstances known at the time, their reliance was justifiable. *Morgan*, 415 B.R. at 649. In essence, in order for the court to find the Judgment is a nondischargeable debt under subsection (a)(2)(A), the Plaintiffs must prove fraud in the inducement, and a determination of nondischargeability under § 523(a)(2)(A) often comes down to the Defendant's conduct prior to, at the time of, and subsequent to the representations at issue and which witnesses are the most credible. *Copeland*, 291 B.R. at 766; *Commercial Bank & Trust Co. v. McCoy (In re McCoy)*, 269 B.R. 193, 198 (Bankr. W.D. Tenn. 2001).

Section 523(a)(4) allows a debt obtained by embezzlement, larceny, or through fraud or defalcation while acting in a fiduciary capacity to be nondischargeable.[6] For purposes of § 523(a)(4), embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996); *see also Dantone v. Dantone (In re Dantone)*, 477 B.R. 28, 39 (B.A.P. 6th Cir. 2012). Embezzlement is demonstrated by proof that the creditor

---

[6] Conceding that there is no fiduciary relationship, the Plaintiffs are only proceeding under the embezzlement and/or larceny prongs.

12

entrusted property to the debtor who then appropriated it for a use other than the entrusted use, and

the circumstances indicate fraud. *Bd. of Trs. v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007)

(citing *Brady*, 101 F.3d at 1173); *Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R. 104, 116

(B.A.P. 6th Cir. 2007).   "Both the intent and the actual misappropriation necessary to prove

embezzlement may be shown by circumstantial evidence[, and] . . . the Plaintiff must prove fraud

in fact, involving moral turpitude or intentional wrong, rather than implied or constructive fraud."

*WebMD v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880-81 (Bankr. E.D. Tenn. 2005) (citations and

quotation marks omitted).   Larceny under § 523(a)(4) is proved if the debtor wrongfully and with

fraudulent intent takes property from its rightful owner, *see Great Am. Ins. Co. v. O'Brien (In re*

*O'Brien)*, 154 B.R. 480, 483 (Bankr. W.D. Tenn. 1993) (citing *Kaye v. Rose (In re Rose)*, 934 F.2d

901, 903 (7th Cir. 1991)), and differs from embezzlement because the embezzler's initial acquisition

of the property at issue is lawful.  *Aristocrat Lakewood Nursing Home v. Dryja (In re Dryja)*,

259 B.R. 629, 632 (Bankr. N.D. Ohio 2001).   The larceny exception to discharge does not apply if

the original possession of the property was lawful.  *Gidelski v. Anton (In re Anton)*, 2013 WL

1747907, at *5, 2013 Bankr. LEXIS 1715, at *13-14 (Bankr. E.D. Mich. Apr. 12, 2013).

Finally, in order to prevail under § 523(a)(6), a plaintiff must prove the existence of "a

deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury[,]"

*Kawaauhau v. Geiger*, 118 S. Ct. 974, 977 (1998), and that the defendant either desired to cause the

consequences of his actions or believed with reasonable certainty that such consequences would

occur.  *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999).  "That a

reasonable debtor 'should have known' that his conduct risked injury to others is simply insufficient.

Instead, the debtor must 'will or desire harm, or believe injury is substantially certain to occur as a

13

result of his behavior.'" *Guthrie v. Kokenge (In re Kokenge)*, 279 B.R. 541, 543 (Bankr. E.D. Tenn. 2002) (quoting *Markowitz*, 190 F.3d at 465 n.10).   Additionally, "the injury must invade the creditor's legal rights."   *Steiner v. Best (In re Best)*, 109 Fed. Appx. 1, 6 (6th Cir. 2004). Accordingly, based upon Sixth Circuit authority, "unless the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it, he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz*, 190 F.3d at 464; *Kokenge*, 279 B.R. at 543 (citations omitted).

"Although the 'willful' and 'malicious' requirements will be found concurrently in most cases, the terms are distinct, and both requirements must be met under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006). "An act will be deemed 'willful' only if it was undertaken with the actual intent to cause injury," *Cash Am. Fin. Servs. v. Fox (In re Fox)*, 370 B.R. 104, 119 (B.A.P. 6th Cir. 2007), requiring the court to "look into the debtor's mind subjectively" in order to determine whether the debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act[.]" *Monsanto Co. v. Wood (In re Wood)*, 309 B.R. 745, 753 (Bankr. W.D. Tenn. 2004). On the other hand, "[a]n act is 'malicious' if it is undertaken 'in conscious disregard of one's duties or without just cause or excuse' . . . [and does] 'not require ill-will or specific intent to do harm.'" *Fox*, 370 B.R. at 119 (quoting *Wheeler v. Laundani*, 783 F.2d 610, 615 (6th Cir. 1986)). "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. [K]nowledge that legal rights are being violated is insufficient to establish malice . . . .'" *Best*, 109 Fed. Appx. at 6 (quoting *In re Mulder*, 306 B.R. 265, 270 (Bankr. N.D. Iowa 2004)).   In other words, "[l]ack of excuse or

14

justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)."

*Lupo*, 353 B.R. at 550.  Nondischargeability under § 523(a)(6) requires proof that the Plaintiff was

injured and the Defendant's deliberate or intentional actions caused its injury, but "[m]ere negligence

is not sufficient to except a debt from discharge under § 523(a)(6)."  *Fox*, 370 B.R. at 119.

Additionally, the bankruptcy court possesses the jurisdiction and authority to adjudicate the

Plaintiffs' claims and award any necessary damages.  *Copeland*, 291 B.R. at 792 (citing *Longo v.*

*McLaren (In re McLaren)*, 3 F.3d 958, 965 (6th Cir. 1993)).  Furthermore, although the Note and

insurance policy were between PowerTenn Properties, LLC and First National Bank and Auto

Owners Insurance Company, respectively, the Defendant may be liable for monies owed to the

Plaintiffs under Tennessee law.  "Notwithstanding the provisions of subdivisions (a)(1) and (a)(2)

[that 'a member, . . . employee or other agent of an LLC does not have any personal obligation and

is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC' . . . or . . .

'for the acts or omissions of any other member, . . . or other agent of the LLC'], a member . . . or

other agent may become personally liable in contract, tort or otherwise by reason of such person's

own acts or conduct."  TENN. CODE ANN. § 48-217-101(a)(3) (2012).  The Defendant is the

managing member of PowerTenn Properties, LLC, and he is liable to the Plaintiffs for any tortious

or fraudulent conduct perpetrated against the Plaintiffs while acting in that role.  *See, e.g., Wilson v.*

*Wayne County*, 856 F. Supp. 1254, 1264 (M.D. Tenn. 1994) ("'Principal and agent can be joined in

one action for a wrong resulting from the tortious conduct of an agent . . . and a judgment can be

rendered against each.'") (quoting RESTATEMENT (SECOND) OF AGENCY §§ 359C(1) (1957);

*Brungard v. Caprice Records, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct. App. 1980) ("[A]n agent cannot

15

escape liability for tortious acts, including fraud or misrepresentation, against third persons simply

because the agent was acting within the scope of the agency or at the direction of the employer.").

## III

Per Mr. Bolinger's testimony, First National Bank seeks a judgment against the Defendant

in the amount of $26,705.19, representing the $7,825.98 deficiency balance on the Note, a non-

accrual interest balance of $9,238.92, and attorneys' fees and costs in the amount of $9,640.29,

together with a determination that the judgment is nondischargeable under 11 U.S.C. § 523(a)(2)

and/or (4).  With respect to First National Bank's entitlement to a judgment, under the terms of the

Note, PowerTenn Properties, LLC is responsible for all of the foregoing pursuant to the following

provisions:

> REMEDIES: If I am in default on this note you have, but are not limited to, the
> following remedies:
>
> (1) You may demand immediate payment of all I owe you under this note (principal,
> accrued unpaid interest and other accrued charges).
>
> . . . .
> COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of
> collection, replevin or any other or similar type of cost if I am in default.  In addition,
> if you hire an attorney to collect this note, I also agree to pay any fee you incur with
> such attorney plus court costs . . .[.] To the extent permitted by the United States
> Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you
> incur to collect this debt as awarded by any court exercising jurisdiction under the
> Bankruptcy Code.

TRIAL EX. 2.  The Defendant did not dispute Mr. Bolinger's testimony concerning the amount of

damages sought by First National Bank.  Because he executed a Guaranty of PowerTenn Properties,

LLC's obligations to First National Bank, the Defendant is likewise liable to First National Bank for

the amounts due and owing under the Note, and First National Bank is entitled to a judgment under

16

the terms of the Note in the amount of $26,705.19. Nevertheless, although First National Bank is entitled to a judgment under the terms of the Note, it is not entitled to a determination that this indebtedness is nondischargeable under either subsection (a)(2) or (a)(4) of § 523.

First National Bank argues that the Defendant obtained money through fraud or misrepresentation by intentionally providing it with a fraudulent financial statement reflecting that, as of January 18, 2010, the Skyview Drive Property had a market value of $130,000.00 when the house had been destroyed by fire only two weeks prior and by obtaining the insurance proceeds from Auto Owners Insurance Company without disclosing the mortgage obligation to First National Bank.[7] Per Mr. Bolinger's testimony, had First National Bank received an accurate financial statement reflecting the property's true value after the fire loss from the Defendant on January 18, 2010, it would have been alerted to the fact that the fire had occurred, would have investigated further, and would have taken immediate action to be in contact with Auto Owners Insurance Company in order to procure the proceeds due under the policy, thus First National Bank relied on the Defendant's misrepresentation.

Clearly the January 18, 2010 financial statement provided to First National Bank by the Defendant was false and misleading, and the Defendant's explanation when questioned about the financial statement at trial that there had been a lot going on when he sent the document to First National Bank so he had simply "reissued" the same information that he had sent the previous year with a value also reflecting his intent to rebuild the house was not credible. It is also evident from

---

[7] The record establishes that the Defendant listed the Skyview Drive Property for sale in April 2011 for $14,900. TRIAL EX. 10.

Mr. Bolinger's testimony that First National Bank relied upon the information contained therein, although the court is not convinced that its reliance was altogether justifiable.  Regardless, the debt does not fall within the scope of § 523(a)(2)(A) because the financial statement and the representations made therein did not induce First National Bank to make the loan to PowerTenn Properties, LLC.    In order for First National Bank to succeed under this subsection, misrepresentations made by the Defendant, as managing member of PowerTenn Properties, LLC, would have been required to be made when he obtained or renewed the loan from First National Bank.  There was no fraud in the inducement that allowed the Defendant to collect money or receive a benefit from First National Bank based upon the January 18, 2010 financial statement.  Rather, the insurance proceeds that the Defendant received from Auto Owners Insurance Company give rise to the potential for only Auto Owners Insurance Company, as the party from whom the Defendant received money and/or a benefit, to have a nondischargeable debt against the Defendant for disbursement of those funds under subsection (a)(2)(A).

First National Bank also argues that the Defendant did not disclose the fire or turn over the insurance proceeds with an intent to hinder enforcement of First National Bank's lien and that he submitted a false or fraudulent insurance claim, both of which First National Bank avers are included within Tennessee's theft offenses codified in Tennessee Code Annotated § 39-14-101 through -154 (2010), specifically relying on Tennessee Code Annotated §§ 39-14-116 and -133.  Under Tennessee law, "[a] person who claims ownership of or interest in any property which is the subject of a security interest, security agreement, deed of trust, [or] mortgage . . . commits an offense who, with intent to hinder enforcement of that interest or lien, destroys, removes, conceals, encumbers,

18

transfers, or otherwise harms or reduces the value of the property." TENN. CODE ANN. § 39-14-116.

Additionally,

> [a]ny person who intentionally presents or causes to be presented a false or fraudulent claim, or any proof in support of such claim, for the payment of a loss, or other benefits, upon any contract of insurance coverage, or automobile comprehensive or collision insurance, or certificate of such insurance or prepares, makes or subscribes to a false or fraudulent account, certificate, affidavit or proof of loss, or other documents or writing, with intent that the same may be presented or used in support of such claim, is punished as in the case of theft.

TENN. CODE ANN. § 39-14-133.

As an initial matter, these statutes are criminal statues and have no application within the scope of this adversary proceeding. *See, e.g., Tillimon v. Mack (In re Mack)*, 2013 WL 3822075, at *6, 2013 Bankr. LEXIS 2965, at *17 (Bankr. N.D. Ohio July 23, 2013) (stating that although the debtor had committed a "theft" offense under Ohio law, it was a broader term, and the definition of larceny under § 523(a)(4) is determined under federal law). In this case, the Defendant was not charged with and has not been convicted of a crime by any law enforcement agency. Furthermore, none of the Defendant's actions fall within the scope of either statute. Tennessee Code Annotated § 39-14-116 makes it a felony to destroy, remove, conceal, encumber, transfer, or harm property that is encumbered in order to reduce its value with the intent to hinder the secured creditor. In this case, although the Skyview Drive Property was damaged and its value reduced by the fire that destroyed the house upon it, the Defendant did not cause that damage, did not set the fire, and was not the cause of the harm to the property. Additionally, the Defendant did not file a false claim within the scope of Tennessee Code Annotated § 39-14-133 in that the claim he submitted to Auto Owners Insurance Company for loss due to the fire was valid and based upon the actual events that occurred on January 4, 2010. The record reflects that the Defendant did not identify First National Bank as

having an interest in the Skyview Drive Property on the Proof of Loss form; however, the underlying

claim itself for the fire damage and the losses incurred as a result thereof was not false and was

properly submitted to Auto Owners Insurance Company.   Furthermore, in reality, the insurance

policy in effect as of the January 4, 2010 fire did not – through no fault of either First National Bank

or the Defendant – list First National Bank as a lienholder or loss payee with respect to the Skyview

Drive Property.

Subsection (4) also provides that a debt obtained through embezzlement is nondischargeable.

Although "[m]ost courts . . . have concluded that an individual cannot embezzle his own property

for purposes of § 523(a)(4)[,]" *Goss v. Parkins (In re Parkins)*, 2012 WL 7749187, at *7, 2012

Bankr. LEXIS 5668, at *17 (Bankr. E.D. Tenn. Dec. 7, 2012), in this case, the insurance proceeds

were not the sole property of the Defendant, but instead, were also property of First National Bank

as mortgagee and lienholder on the Skyview Drive Property.   Under Tennessee law,  "[a] mortgagee

has an insurable interest in the mortgage property." *Citizens Tri-County Bank v. C.A. Ga. Mut. Ins.

Co.*, 11 S.W.3d 120, 123 (Tenn. Ct. App. 1999).

> Generally, a "loss-payable" clause provides that proceeds of an insurance policy are
> to be paid first to the designated loss payee rather than to the named insured.  A
> loss-payable clause is generally one of two types:  (1) "simple" or "open" or
> (2) "standard" or "union." A "simple" or "open" loss-payable clause provides simply
> that, when a covered loss occurs, the proceeds of the policy shall first be distributed
> to the lender.  Under that type of clause, the lender's rights are no greater than those
> of the insured. . . . .  In such a situation, the loss payee's right to coverage extended
> no further than the insured's right to coverage.  In contrast, in the second type, the
> "standard" or "union" type of loss-payable clause, language is added to prevent the
> policy from being invalidated by the insured's actions or neglect, and thus establishes
> a separate contract between insurance company and the loss payee.  The essential
> nature and function of the standard/union clause is to furnish to the mortgagee a
> reliable security in a definite sum free from any interference on the part of the
> mortgagor which would, to any extent, invalidate or make less adequate that security.

*Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 2002 WL 1308344, at *4, 2002 Tenn. Ct. App. LEXIS 205 at *13-14 (Tenn. Ct. App. Mar. 18, 2002) (internal citations and quotation marks omitted); *see also* TENN. CODE ANN. § 56-7-804 (2008) ("When any person, as trustee, mortgagee, assignee, or otherwise, possesses or has any fire insurance policy on realty made payable to the person, or other person as that person's interest may appear, then the insurance as to the interest of the trustee, mortgagee, assignee or other person named in the policy shall not be invalidated by an act or neglect of the mortgagor owner of the property so insured[.]").  "Where . . . a mortgage or insurance policy provides for insurance proceeds to be paid to the mortgagee 'as its interest appears,' the mortgagee is entitled to insurance proceeds to the extent of the mortgage debt." *Benton Banking Co. v. Tenn. Farmers Mut. Ins. Co.*, 906 S.W.2d 436, 438 (Tenn. 1995).

In this case, the Deed of Trust between First National Bank and the Defendant expressly provides that the Defendant is required to maintain insurance and that all proceeds from any loss were to be paid to First National Bank.  The record is not clear, however, concerning whether the Defendant's insurance policy was "simple" or "standard."  Irrespective, it is undisputed that when the Defendant first obtained insurance on the Skyview Drive Property, the policy reflected First National Bank's lien.  It is equally undisputed that the insurance policy in effect at the time of the fire on January 4, 2010, did not list the lien or note First National Bank as loss payee, and that these omissions were due to an error by an underwriter with Auto Owners Insurance Company.  "Insurance contracts are subject to the same rules of construction and enforcement as contracts generally." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998); *see also* TENN. CODE ANN. § 56-7-102 (2008).  "In the absence of fraud or mistake, a contract must be interpreted and enforced as written even though it contains terms which may be thought harsh and

unjust." *St. Paul Surplus Lines Ins. Co. v. Bishops Gate Ins. Co.*, 725 S.W.2d 948, 951 (Tenn. Ct.

App. 1986).

> Insurance policies should be construed as a whole in a reasonable and logical manner. The essential components of a general liability insurance policy include (1) the declarations, (2) the insuring agreements and definitions, (3) the exclusions, (4) the conditions, and (5) the endorsements.  When coverage questions arise, these components should be construed in the above order to avoid confusion and error.

> The insuring agreement sets the outer limits of an insurer's contractual liability.  If coverage cannot be found in the insuring agreement, it will not be found elsewhere in the policy.  Exclusions help define and shape the scope of coverage, but they must be read in terms of the insuring agreement to which they apply.  Exclusions can only decrease coverage; they cannot increase it.

*Standard Fire Ins. Co.*, 972 S.W.2d at 7-8 (internal citations omitted).

"[T]he mortgagee's rights under an insurance policy are generally fixed at the time of the loss

and are based on the mortgagee's interest in the property[,] . . . [and t]here has developed a body of

law in many jurisdictions so as to create a general rule that a mortgagee or lien holder has no claim

to the proceeds of a fire insurance policy unless the mortgagee or the lien holder has been named the

mortgagee loss payee[.]" *Citizens Tri-County Bank*, 11 S.W.3d at 123.  Nevertheless, as recently

held by the Tennessee Supreme Court, a mistake by the agent in renewing an insurance policy is not

ratified by the insured through the payment of his or her premiums.  *Allstate Ins. Co. v. Tarrant*,

363 S.W.3d 508, 516-19 (Tenn. 2012).  Furthermore, "[a]s a general rule the insurer is precluded

from asserting a ground of forfeiture resulting from mistake, fraud, or negligence of its agent without

the knowledge or collusion of the insured. . . .  The negligence or mistake of an agent within the

scope of his authority is the responsibility of his principal, the insurance company." *Vulcan Life &*

*Accident Ins. Co. v. Segars*, 391 S.W.2d 393, 397 (Tenn. 1965) (citations omitted).  "An insurance

company is generally deemed estopped to deny policy liability on a matter arising out of the

negligence or mistake of its agent, and if either party has to suffer from an insurance agent's mistake, it must be the insurance company." *Tarrant*, 363 S.W.3d at 519-20.

Due to a mistake on the part of Auto Owners Insurance Company, First National Bank was not shown as lienholder or loss payee in the renewal policy. However, because the failure to note First National Bank on the renewal policy was, as testified to by Mr. Simmons, a mistake on the part of the underwriter, the court finds that, under Tennessee law, Auto Owners Insurance Company would not have been allowed to deny First National Bank coverage as mortgagee or loss payee under the original policy obtained by the Defendant. Accordingly, as set forth in the Deed of Trust, the insurance proceeds paid to the Defendant should have been paid to First National Bank and the Defendant's use of the proceeds for purposes other than to pay the mortgage was in derogation of First National Bank's rights as mortgagee. Because they lawfully came into the Defendant's hands and he fraudulently misappropriated the insurance proceeds, First National Bank would be entitled to a determination of nondischargeability under § 523(a)(4) for the $86,653.14 received by the Defendant *but for* the fact that it has been made whole by Auto Owners Insurance Company's payment of the $86,653.14 in settlement of the Chancery Court Lawsuit. This amount represents the entire amount to which First National Bank was entitled as a result of the January 4, 2010 fire loss under the insurance policy in effect.

Based upon the foregoing, the court finds that although First National Bank is, under the terms of the Note and Guaranty executed by the Defendant, entitled to a judgment against the Defendant in the amount of $26,705.19, that indebtedness was discharged on April 16, 2012.

<div align="center">23</div>

## IV

In its adversary proceeding, Auto Owners Insurance Company seeks a judgment against the Defendant in the amount of $86,653.14, representing the amount it paid to First National Bank in settlement of the Chancery Court Lawsuit, together with a determination that the judgment is nondischargeable under § 523(a)(2), (4), and/or (6).[8]  Based upon the record, the court agrees that Auto Owners Insurance Company is entitled to a judgment in the amount of $86,653.14 against the Defendant and that, pursuant to § 523(a)(4) and (6), the judgment is nondischargeable because the Defendant embezzled and converted the insurance proceeds paid to him by Auto Owners Insurance Company and because of his fraudulent and intentional acts, Auto Owners Insurance Company was required to pay proceeds a second time to First National Bank.

Auto Owners Insurance Company argues that the Defendant misappropriated the funds he received from it, knowing that they should have been paid to First National Bank such that he, in essence, embezzled the insurance proceeds.  As previously stated, because they lawfully came into the Defendant's hands, the Defendant's fraudulent misappropriation of the insurance proceeds constituted embezzlement with respect to First National Bank, and the same reasoning and proof applies with respect to Auto Owners Insurance Company.  As discussed, the insurance proceeds paid to the Defendant should have been payable to First National Bank or, at the very least, to First National Bank and the Defendant jointly, and the Defendant's use of the proceeds for purposes other than to repay the mortgage to First National Bank constituted embezzlement of those funds and

---

[8] The Complaint initiating the Auto Owners Adversary Proceeding and the Pre-Trial Order entered on October 16, 2012, includes a request for interest; however, Auto Owners Insurance Company made no argument in its brief or at trial that it is entitled to prejudgment interest and the court will not, therefore, consider this issue.

24

provide for a determination that Auto Owners Insurance Company is entitled to a judgment in the amount of $86,653.14 that is nondischargeable under § 523(a)(4).

Additionally, it is well settled that acts of conversion may serve the basis for a determination of nondischargeability under § 523(a)(6). Under Tennessee law, conversion "is the appropriation of tangible property to a party's own use and benefit in exclusion of defiance of the owner's rights." *Thompson v. Thompson*, 2009 Tenn. App. LEXIS 99, at *45, 2009 WL 637289, at *14 (Tenn. Ct. App. Mar. 12, 2009); *see also Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977) (defining conversion as an intentional tort requiring proof that a party appropriated another's property for his own use by exercising dominion and control in exclusion or defiance of the owner's right to use and benefit from the property). "The main focus of the tort is the interference with an owner's property right[ and t]he degree of this interference, as well as the impact on the property, determines whether there has been a conversion." *Gen. Elec. Credit Corp. v. Kelly & Dearing Aviation*, 765 S.W.2d 750, 753 (Tenn. Ct. App. 1988). "[W]hile they do appreciably overlap, liability for conversion does not automatically equate with the existence of a nondischargeable debt under § 523(a)(6)." *Superior Metal Prods. v. Martin (In re Martin)*, 321 B.R. 437, 441 (Bankr. N.D. Ohio 2004). Whether an act of conversion constitutes a willful and malicious injury within the scope of § 523(a)(6) depends upon whether the party intended to cause the harm or was substantially certain that such harm would occur. *Sweeney v. Lombardi (In re Lombardi)*, 263 B.R. 848, 853 (Bankr. S.D. Ohio 2001).

In this case, the court finds that the Defendant's actions were willful and malicious. Whether the Defendant was aware that the insurance policy had not listed First National Bank's lien following

its renewal is unclear; however, there is no dispute that the Defendant knew that First National Bank held the outstanding mortgage on the Skyview Drive Property when he received the insurance proceeds checks from Auto Owners Insurance Company.[9]  In fact, PowerTenn Properties, LLC, through the Defendant, hid the loss by continuing to pay First National Bank on the mortgage obligation for almost a year following the fire.  At no point during that time did the Defendant notify First National Bank of the fire, nor did he ever pay any significant portion of the insurance proceeds to First National Bank in satisfaction of the mortgage.  Instead, the Defendant provided First National Bank with a financial statement on January 18, 2010, that failed to disclose the fire and falsely represented that the value of the Skyview Drive Property was $130,000.00.[10]  Thereafter, the Defendant received and spent the insurance proceeds received from Auto Owners Insurance Company on other properties, as well as on personal and business expenditures, to the detriment of First National Bank's rights, all the while knowing that he was causing injury to First National Bank by his silence, misrepresentations, and failure to utilize the insurance proceeds to repay the mortgage. His actions were in conscious disregard of his obligations under the Note and Deed of Trust, constituting willful and malicious conduct sufficient to justify a determination of nondischargeability under § 523(a)(6).[11]

Auto Owners Insurance Company also argued that because the Defendant submitted the Proof of Loss on behalf of PowerTenn Properties, LLC without noting the Bank's lien, he made

---

[9] The Defendant was not an unsophisticated borrower.  He testified that between 2004 and 2011, he had purchased between sixty and seventy rental properties, all of which were financed.

[10] *See supra* n.7.

[11] First National Bank did not seek a determination of nondischargeability under § 523(a)(6).

material misrepresentations that fall within the scope of § 523(a)(2)(A).  The court agrees that Auto

Owners Insurance Company sufficiently proved that the Defendant obtained money from it through

material misrepresentations and that the misrepresentations were the cause of Auto Owners

Insurance Company's losses.  Auto Owners Insurance Company did not, nor could it, prove that it

was justified in its reliance on the Defendant's representations, thus defeating its arguments under

§ 523(a)(2).  Although the Proof of Loss form marked as Trial Exhibit 4 does state "None" in

response to the question whether other persons or entities hold an interest in the property, and the

Proof of Loss form marked as Trial Exhibit 5 states only that Anne Simerlein holds an interest in the

property, the Proof of Loss Notice sent by William Knight Insurance Agency to Auto Owners

Insurance Company on January 4, 2010, which is marked as Trial Exhibit 19, reflects that there is

a mortgage owed to First National Bank.  Furthermore, the original policy designated First National

Bank as loss payee, and it was through some underwriting mistake, i.e., its own error, that the lien

was not listed in the renewal policy marked as Collective Trial Exhibit 1.  The original policy

together with the Proof of Loss Notice from William Knight Insurance Agency defeat Auto Owners

Insurance Company's argument that it justifiably relied on the Defendant's Proof of Loss forms.

## V

In summary, the court finds that First National Bank is entitled to a judgment against the

Defendant in the amount of $26,705.19, but that this judgment was discharged on April 16, 2012.

Auto Owners Insurance Company is entitled to a judgment against the Defendant in the amount of

$86,653.14, which is nondischargeable under § 523(a)(4) and (6).

A Judgment consistent with this Memorandum will be entered in each of the foregoing adversary proceedings.

FILED:  August 26, 2013

<div style="margin-left: 40%;">

BY THE COURT

*/s/  RICHARD STAIR, JR.*

RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

</div>